**UNITED STATES of America,**
**Appellee,**

v.

**Ralph DE SIMONE, Defendant-Appellant.**

**No. 52, Docket 72–1311.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 13, 1972.

Decided Nov. 6, 1972.

Harvey A. Silverglate, Boston, Mass. (Zalkind & Silvergate, Roger C. Park, Boston, Mass., James M. La Rossa, Gerald L. Shargel, New York City, on brief), for defendant-appellant.

Ira Lee Sorkin, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., Peter F. Rient, Asst. U. S. Atty., on brief), for appellee.

Before FRIENDLY, Chief Judge, and LUMBARD and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

On June 2, 1971, appellant Ralph De Simone was indicted for conspiring with others to violate former sections 173 and 174 of Title 21, United States Code, prohibiting the importation of narcotic drugs. The indictment alleged that the conspiracy had lasted from approximately December 1, 1967 until the date of filing of the indictment, and it specified four overt acts performed in furtherance of the conspiracy. The last of these was alleged to have taken place on May 17, 1971. De Simone pleaded not guilty.

In January 1972, after three days of trial before Judge John M. Cannella and a jury in the United States District Court for the Southern District of New York, De Simone changed his plea to guilty. This followed uncontradicted testimony of conspiratorial activity occurring prior to May 1, 1971, which De Simone acknowledged, when he changed his plea, to be true. On March 20, 1972, Judge Cannella sentenced De Simone to ten years in prison and fined him $20,000, pursuant to the provisions of 21 U.S.C. § 174 (minimum mandatory five-year sentence) and 26 U.S.C. § 7237 (d) (no probation, no parole). However, both 21 U.S.C. §§ 173, 174 and 26 U.S.C. § 7237(d) had been repealed as of May 1, 1971 by the Comprehensive Drug Abuse Prevention and Control Act, §§ 1101(a)(2), (b)(4)(A), 84 Stat. 1291, 1292 (Drug Control Act). Under the new law, 21 U.S.C. §§ 801 et seq., there is neither a general minimum sentence requirement nor a blanket ban on probation or parole in such narcotic cases. Immediately after sentencing, De Simone's attorney asked the court to "note my objection to the defendant De Simone being sentenced under 173 and 174" on the ground that the sentencing provisions of the new Drug Control Act should have been applied. De Simone, who is now serving his sentence, appeals.

De Simone's two principal arguments concern that portion of former section 7237(d) that denied parole to a defendant convicted under 21 U.S.C. §§ 173, 174.[1] Appellant first asserts that the no-parole rule of section 7237(d) does not apply to a defendant sentenced after repeal of the section even though his criminal conduct occurred before repeal. The key statutory provisions bearing on this question are two so-called savings clauses. The new Drug Control Act states in section 1103(a):

> Prosecutions for any violation of law occurring prior to the effective date of section 1101 [repealing, *inter alia,* 21 U.S.C. §§ 173, 174] shall not be affected by the repeals or amendments made by such section . . . or abated by reason thereof.

In addition, there is a general federal savings clause, first enacted in 1871, at 1 U.S.C. § 109, which provides in relevant part:

> The repeal of any statute shall not have the effect to release or extinguish

---

1. This focus on parole is understandable. Since Judge Cannella actually imposed a sentence under the prior statute greater than the mandatory five-year minimum, it is not likely that even under the more flexible provisions of the new Drug Control Act the judge would have granted De Simone probation or a shorter prison term. But under the new Act the judge could not have denied parole.

any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

Appellant argues that after May 1, 1971 neither clause "saves" the no-parole rule of section 7237(d). As to the former, appellant asserts that the term "prosecutions" in section 1103(a) does not cover matters relating to parole. As for the latter, appellant says Congress intended to supercede section 109 by section 1103(a) and, in any event, the no-parole provision of section 7237(d) is a "procedural" matter to which section 109 does not apply.

That section 1103(a) applies to sentencing is now well-settled in this circuit. See, e. g., United States v. Ross, 464 F.2d 376, 379 (1972); United States v. Singleton, 460 F.2d 1148, 1155 (1972); United States v. Fiotto, 454 F. 2d 252, 255 (1972) (per curiam), cert. denied, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972). Accord, United States v. Bradley, 455 F.2d 1181, 1189, 1191 (1st Cir.), cert. granted, 407 U.S. 908, 92 S.Ct. 2438, 32 L.Ed.2d 682 (1972); but cf. United States v. McGarr, 461 F.2d 1 (7th Cir. 1972) (per curiam); United States v. Stephens, 449 F.2d 103 (9th Cir. 1971). These cases clearly hold that when Congress said that "prosecutions for any violation of law" before May 1, 1971 "shall not be affected by the [repeal]" of various narcotics laws, it intended to permit sentencing under the repealed law after a conviction under it. But appellant points out that these cases did not hold that for purposes of section 1103(a) sentencing includes denial of parole. Quoting from Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972),[2] ap-

pellant seeks to distinguish parole from probation—discussed together in United States v. Ross, *supra*—by arguing that probation is an option open to the court at the time of sentence whereas a decision to release a prisoner on parole is made at a later time by an administrative board. From this appellant concludes that a no-parole rule is not part of sentencing at all.

Appellant's argument is a substantial one, but we conclude that it should be rejected. It is true that none of the cases in this Court, cited above, discuss specifically whether the no-parole rule of section 7237(d) is saved by section 1103 (a). However, the tenor of *Ross* certainly implies rejection of appellant's view. In *Ross*, we regarded "parole or probation" as both part of the same process, and "as alternatives to prison." 464 F.2d at 379. While the discussion in that case then focused on the section 109 savings clause, we do not believe that to be a significant distinction in this context. Moreover, it is unrealistic to view a decision at the time of sentence regarding the future availability of parole as not part of the sentencing process. Certainly a direction by the sentencing judge in a non-narcotics case that parole be considered at an earlier time than usual[3] would be fairly described as part of the "sentence." We do not see why the reverse side of the coin—a decision to delay or eliminate consideration of parole —should be regarded any differently. And the fact that the decision has already been made by the legislature for all such offenders does not change its essential character. Finally, we do not regard the Court's observation in *Morrissey,* made in an entirely different context, as controlling on the issue now before us.

Turning to the effect of section 109, *Ross* seems even more in point since it clearly held that "§ 7237(d) is . . .

2. At 408 U.S. 480, 92 S.Ct. 2600, the Court said:

 Parole arises after the end of the criminal prosecution, including imposition of sentence.

3. See 18 U.S.C. § 4208(a).

the type of statute which § 109 was intended to save." Id. See also United States v. Fiotto, *supra*; United States v. Bradley, *supra; cf.* United States v. Taylor, 123 F.Supp. 920 (S.D.N.Y.1954), aff'd mem., 227 F.2d 958 (2d Cir. 1955), cert. denied, 353 U.S. 961, 77 S.Ct. 870, 1 L.Ed.2d 912 (1957). Certainly, no section of the Drug Control Act, which repealed sections 173 and 174, meets the command of section 109 that the "repealing Act . . . expressly provide" for extinguishment of a prior "penalty." Moreover, we do not agree that the section is "procedural." We observed in *Ross*: "[O]ne would be hard pressed to find a prison inmate who did not see the unavailability of parole as a penalty." 464 F.2d at 379. The no-parole rule was clearly intended by Congress specifically as a punitive measure. See H.R.Rep.No.2388, 84th Cong., 2d Sess., U.S.Code Cong. & Admin.News 3283–85 (1956). Furthermore, as appellant concedes, the no-parole rule does have a substantive effect because it prevents imprisonment from ending before the minimum statutory term (less time off for good behavior) is served.

De Simone next argues that even if the no-parole provision of section 7237(d) applies to post-repeal convictions for acts performed before repeal, it cannot apply to a conspiracy continuing after the effective date (May 1, 1971) of the new law. We have not previously dealt with this precise problem, since the earlier cases, cited above, did not involve offenses that continued after May 1, 1971. Nonetheless, this case does not seem significantly different from prior ones. It is true that the indictment alleged a conspiracy extending for about one month beyond the date of repeal of section 7237 (d) and that it specified one overt act occurring after repeal. But section 1103

(a) applies to "[p]rosecutions for any violation of law occurring prior to the effective date of section 1101 . . . ." In this case, a conspiracy was commenced several years before the effective date of the new provision and three of the four overt acts cited in the indictment took place during that period. Hence there is no question that a "violation of law [occurred] prior to" May 1, 1971. This violation is the basis of the indictment, and the fact that the conspiracy continued for a time after the change in law does not take the case beyond the reach of section 1103(a).[4]

Appellant directs our attention to several decisions that have upheld sentencing for conspiracy under a law allowing longer sentences that had been enacted during the conspiracy. *E. g.*, Huff v. United States, 192 F.2d 911 (5th Cir. 1951), cert. denied, 342 U.S. 946, 72 S.Ct. 560, 96 L.Ed. 703 (1952), and United States v. Jackson, 94 F.Supp. 912 (E.D. S.C.1951) (both non-narcotics violations). Since the conspiracies in these cases continued after the change, violations of the new law did occur and thus it would be reasonable to allow the lower courts to rely on the more recent sentencing provisions. But these decisions did not purport to *require* the application of the later law.[5] However, in Leyvas v. United States, 371 F.2d 714 (9th Cir. 1967) (involving narcotics), the court did hold that sentencing had to be pursuant to the provisions of the later law, which in that case were harsher rather than more lenient. Although there may perhaps be instances in which such a rule should be followed, we are persuaded, in light of the savings provisions of the Drug Control Act and of section 109, that Congress did not intend to impose such a requirement in a case like this. Moreover, acceptance of ap-

---

4. For the same reasons, section 109 seems applicable as well.

5. The court in United States v. Jackson, *supra*, appears to have relied, at least in part, on the fact that the bulk of the

conspiracy there in question, including four of the five overt acts alleged, took place after the effective date of the new law. See 94 F.Supp. at 913. This reasoning appears to undercut appellant's position.

pellant's position is not compelled by any overriding considerations of equity or reasonableness. Appellant's argument on this point assumes that had he terminated his conspiracy by May 1, 1971, his sentencing under former sections 174 and 7237(d) would have been proper. The fact that he continued in violation of the law for an additional few weeks should not be grounds, absent explicit congressional authorization, for him to demand a more lenient sentence as of right. If further support were needed for the view that at the very least in this case the pre-existing law can be applied, we would note that only a small proportion of the conspiracy is alleged to have taken place after May 1, 1971; the testimony introduced before De Simone pleaded guilty recounted only pre-repeal conspiratorial conduct; De Simone acknowledged when pleading that the testimony was true; and he was aware at the time of his guilty plea that he would be sentenced under the old law.

 Appellant's final arguments are jurisdictional. He claims, apparently for the first time, that the district court could not try him for violating sections 173 and 174, because the conspiracy had continued beyond the date of repeal and included during its latter period a significant overt act. Therefore, according to appellant, the indictment and sentencing could only be under the new Drug Control Act. But although this point goes to the conviction itself rather than merely to the sentence, we view it as essentiallly the same as De Simone's immediately preceding argument regarding a change of law during an on-going conspiracy. Other than the dissenting opinions in Rosenberg v. United States, 346 U.S. 273, 73 S.Ct. 1152, 97 L.Ed. 1607 (1953), appellant does not refer us to any sources that suggest that the district court lacks jurisdiction.[6] Finally, appellant seeks to overturn his conviction based upon a novel interpretation of section 1103(a) of the new Drug Control Act. He would read that provision as saving only prosecutions brought prior to the effective date of the Drug Control Act (May 1, 1971) and as barring those brought thereafter, even though based upon pre-May 1, 1971 criminal conduct. Such an interpretation of section 1103(a) comports neither with the language of the provision nor with common sense. The words "occurring prior to the effective date" in section 1103(a) plainly refer to "any violation of law," not to "prosecutions." Moreover, the effect of appellant's analysis would be to exempt from prosecution all violations of former sections 173 and 174 for which indictments had not been filed by May 1, 1971. There is no reason to believe that Congress intended to confer such immunity on drug traffickers.[7]

Affirmed.

6. In *Rosenberg*, the issue was whether a stay of execution granted by Justice Douglas should be vacated. Appellants claimed that the Atomic Energy Act, ch. 724, § 10(b)(2), (3), 60 Stat. 166, as amended, 42 U.S.C. §§ 2274–75, enacted during their conspiracy and requiring a jury recommendation and a finding of intent to injure the United States as predicates to the imposition of the death penalty, should have been applied in their case. The Court held that their argument raised no substantial question and it vacated the stay. Justices Frankfurter, Black and Douglas dissented.

7. Compare § 1103(a) with § 1103(b). The latter is explicitly limited to "seizures or forfeitures and injunctive proceedings commenced prior to the effective date of" the new law. If Congress had intended to limit § 1103(a) in the same manner, it presumably would have said so.