**UNITED STATES of America,
Appellant,**

v.

**George STORY and Curtis Jones,
Defendants–Appellees.**

**No. 225, Docket 89–1239.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 3, 1989.
Decided Dec. 8, 1989.

Mervyn Hamburg, Asst. U.S. Atty., Albany, N.Y. (Frederick J. Scullin, Jr., John J. McCann, Asst. U.S. Atty., Albany, N.Y., on the brief), for appellant.

Arthur J. Viviani, New York City, for defendant-appellee, George Story.

John W. Mitchell, New York City (Arie Bucheister, LaRossa, Mitchell & Ross, New York City, on the brief), for defendant-appellee Curtis Jones.

Before NEWMAN, PRATT and MAHONEY, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal presents the issue of whether district courts must apply the Sentencing Guidelines with respect to so-called "straddle crimes"—continuing offenses begun before November 1, 1987, when the Guidelines went into effect, and continuing after that date. The United States appeals from the April 19, 1989, judgment of the District Court for the Northern District of New York (Con. G. Cholakis, Judge). The Government seeks review only of the sentences imposed on the defendants. Count 1 of a two-count indictment charged George Story, Curtis Jones, and two other defendants with conspiring to distribute in excess of five kilograms of cocaine from July 1, 1983, through April 7, 1988, in violation of 21 U.S.C. § 846 (1982). Count two charged Story with possession with intent to distribute one-half kilogram of cocaine, in violation of 21 U.S.C. § 841(a)(1) (1982). After Jones's guilty plea and Story's trial, the Court sentenced both under pre-Guidelines law. The Government asserts that the Court was required to sentence under the Guidelines. We agree and vacate both sentences. We remand with instructions to resentence Story pursuant to the Guide-

lines and to give Jones the option of either being resentenced under the Guidelines or withdrawing his guilty plea.

## Background

At Story's trial, the Government presented evidence that Story and Jones committed acts in furtherance of the conspiracy both before and after November 1, 1987. One witness testified that in 1983 he made a cocaine purchase in Florida for Story and arranged for the drug to be transported back to New York, where Story used and sold it. Other witnesses testified that on various occasions between 1983 and 1986, Story gave or sold them small amounts of cocaine and approached them about buying and transporting cocaine for him. During the same period, Jones made frequent trips to New York and allegedly brought small amounts of cocaine with him and had discussions with Story about arranging cocaine purchases in Florida.

A major part of the Government's case, however, focused on Story's and Jones's role in a failed cocaine transaction in late 1987. In October 1987, a government informant, Steven Sabo, approached Story about arranging a two-kilogram cocaine purchase. Sabo then had preliminary discussions in New York with Story and Jones. On November 12, 1987, Sabo met with Story at Story's house, at which time he increased the amount of the planned purchase to ten kilograms. Sabo also testified about a second meeting at Story's house on November 24, where Story agreed, for a fee, to hold funds for the purchase. Thereafter, Sabo dealt mainly with Jones. Sabo and an agent of the Drug Enforcement Administration ("DEA") posing as Sabo's "backer" trav-

eled to Florida, had numerous conversations with Jones and the two other defendants, and taped many of these conversations, which were later introduced as evidence at Story's trial. After attempts to complete the deal failed because of suspicions about Sabo's "backer" (the DEA agent), Story, Jones, and the others were indicted in April 1988.

The first count of the indictment charged all four defendants with conspiring to distribute in excess of five kilograms of cocaine.[1] The second count charged Story alone with possessing and distributing one-half kilogram of cocaine in 1983. Jones pled guilty to the conspiracy count. At the plea allocution, the District Judge stated that, for purposes of sentencing, he would view the case as a pre-Guidelines case if there were evidence that Jones had participated in the conspiracy before November 1, 1987. During the course of the plea proceeding, Jones acknowledged pre-November 1 conduct. Story pled not guilty and was subsequently convicted by a jury on count 1 and acquitted on count 2. In a special verdict, the jury found that the amount of cocaine that Story had conspired to distribute was greater than 500 grams but less than five kilograms.[2]

At the sentencing hearing, the Court, exercising what it viewed as its discretion to apply pre-Guidelines law, sentenced Story to four years' imprisonment and Jones to four years' imprisonment and a $25,000 fine.

## Discussion

I.  Appellate Jurisdiction

■ The Government's right to appeal a non-Guidelines sentence imposed for a "straddle crime" appears to be an issue of

---

**1.** Under a section entitled "Manner and Means" the indictment made three distinct allegations with respect to count one: (1) that all four defendants had operated an ongoing illegal drug organization, (2) that in 1983 Story had arranged for the delivery of one-half kilogram of cocaine to the Northern District of New York, (3) that in November and December of 1987 all four defendants had agreed to the delivery of ten kilograms of cocaine to the Northern District of New York.

**2.** The special verdict form posed the following three questions:

1.  Was the conspiracy for the distribution of 5 kilos, 5,000 grams or more of cocaine?

2.  Was the conspiracy for the distribution of at least ½ kilo, that is 500 grams, but less than 5 kilos, 5,000 grams of cocaine?

3.  Was the conspiracy for the distribution of less than 500 grams of cocaine?

The jury answered "No" to question 1 and "Yes" to question 2.

first impression. Appellees contend that jurisdiction is lacking because, with exceptions not here pertinent, the entire Sentencing Reform Act of 1984, which contains the provision granting the Government a limited right to appeal sentences,[3] applies only to offenses committed after November 1, 1987. However, whether appellees' offenses were committed after that date for purposes of the Guidelines is the issue on the merits. Thus, in order to decide whether the Government may appeal, we must decide the merits of the Government's claim. Doing so is simply an instance of a court's exercising jurisdiction to determine its jurisdiction, which it may always do. *See United States v. United Mine Workers*, 330 U.S. 258, 289–95, 67 S.Ct. 677, 693–97, 91 L.Ed. 884 (1947). We have done so specifically in the context of sentencing provisions where the issues of jurisdiction and the merits were identical. *See United States v. De Simone*, 468 F.2d 1196, 1200 (2d Cir.1972), *cert. denied*, 410 U.S. 989, 93 S.Ct. 1499, 36 L.Ed.2d 188 (1973). Because we conclude on the merits, *infra*, that a continuing offense conspiracy is "committed" after the effective date, at least where acts in furtherance of the conspiracy occur after that date, we hold that the Government may appeal sentences imposed under pre-Guidelines law in such cases.

▮ Appellees further contend that even if the Government may appeal sentences imposed for "straddle crimes," that appeal is limited to instances in which a district court has imposed an incorrect Guidelines sentence. Though a refusal to apply the Guidelines where the law requires their use is probably not "an incorrect application of the sentencing guidelines," 18 U.S.C. § 3742(b)(2), a sentence resulting from such a refusal is one that has been imposed "in violation of law." *Id.* at § 3742(b)(1).

Such a sentence is illegal in the same sense as any sentence that is "contrary to the applicable statute." *United States v. Huss*, 520 F.2d 598, 602 (2d Cir.1975) (interpreting Fed.R.Crim.P. 35).

## II. Application of the Sentencing Guidelines to Straddle Crimes

The Sentencing Reform Act of 1984 ("the 1984 Act"), as amended in 1985 and 1986, provided that the Sentencing Guidelines "shall not go into effect until" November 1, 1987. Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, ch. II, § 235(a)(1), 98 Stat. 2031 (1984), *amended by* Sentencing Reform Amendments Act of 1985, Pub.L. No. 99–217, § 4, 99 Stat. 1728 (1985), and Criminal Law and Procedure Technical Amendments Act of 1986, Pub.L. No. 99–646, § 35, 100 Stat. 3599 (1986). In 1987 Congress further amended the effective date provision of the 1984 Act by adding language to specify that the Act "shall apply only to offenses committed after" the November 1, 1987, effective date. Sentencing Act of 1987, Pub.L. No. 100–182, § 2(a), 101 Stat. 1266 (1987), *codified at* 18 U.S.C. § 3551 note (Effective Date; Savings Provision) (Supp. V 1987) ("the 1987 amendment"). The precise issue for us is whether, as applied to continuing offenses, the phrase "offenses committed after [November 1]" means "offenses continuing after" that date or "offenses begun after" that date.

The statutory text does not resolve the issue, as the Eighth Circuit has noted in *United States v. Tharp*, 884 F.2d 1112, 1114 (8th Cir.1989) ("[F]rom the face of the statute ... it is unclear whether a conspiracy which straddles the effective date was meant to be covered by the Guidelines."). Concurring in *Tharp*, however, Judge Bow-

---

**3.** Section 213(b) of the Sentencing Reform Act of 1984, as amended, provides that the Government, with the personal approval of the Attorney General or the Solicitor General, may appeal a District Court sentence that:
 (1) was imposed in violation of law;
 (2) was imposed as a result of an incorrect application of the sentencing guidelines;
 (3) is less than the sentence specified in the applicable guideline range ...; or

 (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.
18 U.S.C. § 3742(b) (Supp. V 1987), *amended by* Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, tit. VII, § 7103(a), 102 Stat. 4416–17 (1988). The 1988 amendments make no changes relevant to the instant case.

man expressed the view that the plain meaning of the statutory language makes the Guidelines applicable to straddle offenses; he reasoned that because the precise offense alleged in the indictment specified a completion date after November 1, that offense "did not exist" and therefore could not have been "committed" until after that date. *Id.* at 1116 (Bowman, J., concurring).

■ We agree with the *Tharp* majority that the statutory language is ambiguous. Though a straddle offense, by definition, is not *completed* until after November 1, it has *occurred* prior to that date if evidence of conduct prior to that date suffices to prove all the elements of the offense charged. We have previously ruled, in connection with a different sentencing provision, that a conspiracy begun before the effective date of a statutory amendment has "occurred" prior to such date. *United States v. De Simone,* 468 F.2d at 1199 (construing the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, § 1103(a), 84 Stat. 1291, 1294 (1971)). The Government is not bound by the ending date alleged in an indictment. *See, e.g., United States v. Morris,* 700 F.2d 427, 429 (1st Cir.), *cert. denied,* 461 U.S. 947, 103 S.Ct. 2128, 77 L.Ed.2d 1306 (1983). The only elements of a section 846 narcotics conspiracy offense are the existence of a conspiracy and the defendant's willful joining it. *United States v. Brown,* 692 F.2d 345, 348 (5th Cir.1982). The evidence in Story's trial showed the existence of these elements prior to November 1. By using the phrase "committed after [November 1]" in the 1987 amendment of the Sentencing Reform Act, Congress did not select words that resolve the issue before us.

Examining the legislative history of the 1987 amendment, we encounter a curious situation. On the precise issue before us,

the managers of the bill for the House and the Senate expressed diametrically opposing positions. Those expressions of views occurred at the end of a somewhat telescoped legislative process. During May, June, and July of 1987, a House subcommittee held hearings on the Sentencing Guidelines, which were about to become effective on November 1. *See Sentencing Guidelines: Hearings Before the Subcommittee on Criminal Justice of the Committee on the Judiciary,* 100th Cong., 1st Sess. (1987) (hereinafter *"House Hearings"*). These hearings focused upon a number of suggested changes in those provisions of the Sentencing Reform Act that concerned the Sentencing Guidelines. The House and Senate each raised separate bills to amend the 1984 Act in several respects, H.R. 3483, S. 1822, 100th Cong., 1st Sess. (1987), U.S.Code Cong. & Admin. News 1987, p. 2137, but no legislative committee reports were issued. As originally drafted, neither the Senate nor the House bill contained the precise language at issue on this appeal.[4] That language was added to the Senate bill as one of several amendments adopted on October 28, 1987, when S. 1822 was passed. 133 Cong.Rec. S15370 (daily ed. Oct. 28, 1987). In November the managers of the House and Senate bills, working "in conjunction with" the Department of Justice, the Sentencing Commission, and the Judicial Conference of the United States, agreed upon a compromise version of the two bills. *See* 133 Cong.Rec. H10016 (daily ed. November 16, 1987) (statement of Rep. Conyers). Upon adoption by both chambers, the compromise bill became the Sentencing Act of 1987. Section 2(a) of that Act, using the language of the amended Senate bill, amends the Sentencing Reform Act of 1984 to specify that the 1984 Act and, consequently, the Guide-

---

**4.** The House bill contained no provision concerning the effective date of the Sentencing Reform Act. However, an earlier House bill had provided that "[T]he initial sentencing guidelines ... shall apply only with respect to conduct occuring [*sic*] after such guidelines take effect." H.R. 3307 § 4, 100th Cong., 1st Sess. (1987). The Senate bill would have amended section 235(b) of the Comprehensive Crime Con-

trol Act of 1984 to provide that "the amendments [which include the Guideline provisions] made by this chapter [the Sentencing Reform Act of 1984] shall not apply to an offense committed before the effective dates set forth in subsection (a) [which include the November 1, 1987, effective date for the Guidelines]." S. 1822 § 102(a), 100th Cong., 1st Sess. (1987).

lines apply "only to offenses committed after" November 1, 1987.

When the compromise bill was passed by the House, the manager of the bill, Congressman Conyers, placed into the Congressional Record a section-by-section analysis. That analysis includes the following passage, which concerns the issue before us:

> Section 2(a) of the bill amends section 235(a)(1) to solve the constitutional problem that would result from applying the sentencing guidelines mandated by the Sentencing Reform Act, and other provisions enacted by the Sentencing Reform Act, to conduct occurring before the taking effect of the Sentencing Reform Act on November 1, 1987. Such application of the guidelines would violate the ex post facto clause of the Constitution where the guidelines result in harsher punishment than prior law. Because determining on a case-by-case basis when the guidelines would violate the ex post facto clause would lead to much litigation that can and should be avoided, section 101(a) of the bill [section 2(a) of the Act] establishes a bright-line rule that provisions enacted by the Sentencing Reform Act only apply to offenses committed after the taking effect of that Act.[5]

133 Cong.Rec. H10017, 10019 & n. 5 (daily ed. Nov. 16, 1987) (footnotes 1–4 omitted).

On November 20, when the compromise bill was adopted by the Senate, Senator Biden, the bill's manager, submitted, on behalf of himself and the other Senate sponsors of the bill, Senators Hatch, Kennedy, and Thurmond, a statement strongly opposing the interpretation contained in footnote 5 of Congressman Conyer's analysis:

> [The section-by-section] analysis was not part of the compromise that the Senate sponsors entered into with the House and, indeed, has never been discussed with the Senate sponsors of the bill....

> ... [I]n discussing the effective date provision in Section 2 of S. 1822 the House states that "the provisions of the Sentencing Reform Act of 1984 would not apply to an offense begun before November 1, 1987 and completed after that date." This was not the intent of the Senate. It is the view of the Senate sponsors, and the view of the Department of Justice, that *the sentencing guidelines should be given effect with respect to any continuing offense completed after November 1, 1987.* Application of the guidelines to such offenses would not violate the ex post facto clause of the Constitution and, indeed, would seem to be the settled interpretive approach to construing the effective date of a criminal statutory provision [citing cases]. As the Senate's section-by-section analysis of S. 1822 indicates, the purpose of Section 2 of the bill (formerly section 102) is to avoid possible ex post facto problems with current law. This section should not be construed to limit the application of the sentencing guidelines beyond what the Senate—the body that originated this legislation—has deemed necessary to guard against those possible constitutional problems.

133 Cong.Rec. S16646 (daily ed. Nov. 20, 1987) (emphasis added).

Upon signing the bill, President Reagan agreed with the view of the Senate sponsors:

> Consistent with past law on the subject, I understand section 2 of S. 1822 to mean that the Sentencing Reform Act applies to offenses completed after it took effect. Offenses begun prior to, but not completed until on or after, November 1, 1987, will be subject to the Sentencing Reform Act.

23 Weekly Comp.Pres.Doc. 1452 (Dec. 14, 1987), *reprinted in* 1987 U.S.Code Cong. & Admin.News 2135.

---

5. The phrase "offenses committed after the taking effect of the Sentencing Reform Act" added by this legislation means an offense begun and completed after the taking effect of the Sentencing Reform Act of 1984. Thus, the provisions of the Sentencing Reform Act of 1984 would not apply to an offense begun before November 1, 1987 and completed after that date. The policy considerations that constitute the rationale for section 2(a) of this legislation make a different approach unwise policy and constitutionally suspect.

We are persuaded to adopt the Senate sponsors' understanding of the "committed after [November 1]" phrase for several reasons. First, their position is set forth during Senate consideration of the bill in an emphatic statement that argues cogently for their position, whereas the conflicting view is expressed only in a footnote appended to the section-by-section analysis presented during consideration of the bill by the House.

Second, as the Senate sponsors pointed out, the purpose of the new language was to avoid any application of the Guidelines that would violate the Ex Post Facto Clause. Just months before the enactment of S. 1822, the Supreme Court had ruled that an amendment to a state guideline sentencing scheme that enhanced the severity of a sentence could not constitutionally be applied to an offense committed before the effective date of the amendment. *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987). One of the key proposals urged at the House hearings on the federal Sentencing Guidelines was to make sure that they applied only to offenses committed after November 1, 1987, to avoid constitutional problems. *See, e.g., House Hearings* 100–07 (statement of Judge Stephen Breyer presenting position of the Sentencing Commission), 133–44 (statement of Peter Goldberger on behalf of National Association of Criminal Defense Lawyers), 85 (letter from Judge Gerald Bard Tjoflat on behalf of the Judicial Conference of the United States). With respect to continuing offenses, the elimination of ex post facto problems does not require limiting the Guidelines to offenses begun after November 1, since enhanced sentencing provisions may validly be applied to continuing offenses that straddle the effective date of such provisions, as has been held in this Circuit. *United States v. Borelli*, 336 F.2d 376, 386 n. 5 (2d·Cir.1964), *cert. denied*, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965), and elsewhere, *United States v. Baresh*, 790 F.2d 392, 404 (5th Cir.1986); *Leyvas v. United States*, 371 F.2d 714, 717–18 (9th Cir.1967). None of the witnesses urging prospective application of the Guidelines suggested that the Guidelines should not apply to a continuing offense begun before November 1 and completed after that date.

Third, though in some circumstances there is room for doubt as to the weight to be accorded a presidential signing statement in illuminating congressional intent, *see* Garber & Wimmer, *Presidential Signing Statements as Interpretations of Legislative Intent: An Executive Aggrandizement of Power*, 24 Harv.J. on Legis. 363 (1989), President Reagan's views are significant here because the Executive Branch participated in the negotiation of the compromise legislation.

Fourth, the interpretation issue we face does not arise in a context in which a new sentencing arrangement always yields higher sentences than the prior system. Were that the case, the rule of lenity might support an interpretation favoring broad application of pre-Guidelines law. However, though some guideline ranges provide sentences higher than the average time served under pre-Guidelines sentences, which were subject to parole, most of these instances occur because of new mandatory minimum requirements imposed by Congress irrespective of the Guidelines, and in many instances, application of the Guidelines will produce lower sentences than would have been imposed by judges whose discretion under prior law was bounded only by statutory maximums.

■ Finally, construing the Act to make the Guidelines applicable to straddle crimes advances a basic congressional purpose underlying the Guidelines system—to lessen disparity in sentencing. That purpose would be significantly impaired if we were to endorse the approach of the District Court in this case and accord sentencing judges discretion to use either the Guidelines or prior sentencing law for straddle crimes. Application of pre-Guidelines law to all continuing offenses begun prior to November 1, 1987, would contribute to disparity in two ways: Use of pre-Guidelines sentencing law would yield the usual variation in sentences associated with the former system, and would introduce a new source of disparity between sentences for

all continuing offenses begun after November 1 and those begun prior to that date. Disparity will be lessened if the Guidelines are applied, as the Senate sponsors intended, to offenses that continue past November 1. For all of these reasons, we believe the Sentencing Reform Act as amended requires application of the Guidelines to straddle crimes.

One technical objection to our interpretation of the Sentencing Reform Act of 1984 requires consideration. The Sentencing Act of 1987, which included the amendment making clear that the 1984 Act applies only to crimes committed after November 1, 1987, has its own effective date provision, which states: "The amendments made by this Act shall apply with respect to offenses committed after the enactment of this Act." Pub.L. No. 100–182, § 26, 101 Stat. 1272 (1987). Enactment occurred on December 7, 1987. That effective date provision makes sense with respect to the substantive changes accomplished by the 1987 Act, but makes no sense with respect to the amendment contained in section 2(a), which clarifies the effective date provision of the 1984 Act. The whole point of the latter amendment was to make sure that crimes committed before November 1, 1987, would not be subject to the Guidelines. If section 2(a) of the 1987 Act applies only to crimes committed after December 7, 1987, the section is meaningless. *See* T.W. Hutchison & D. Yellen, *Federal Sentencing Law and Practice,* § 10.1 n. 19 (1989).

■ Nevertheless, the Ex Post Facto Clause would prohibit application of any portion of the 1987 Act in a manner that increases the severity of a punishment for a pre-December 7 crime. But it is not the 1987 amendment that causes appellants to be subjected to the higher sentence of the Guidelines. The amendment established what the Ex Post Facto Clause would have required in any event: The Guidelines could not be applied to enhance the sentence for any crime committed before November 1, 1987, the effective date of the Guidelines. As to straddle offenses, the issue of whether they are covered by the Guidelines is the same whether decided un-

der the 1984 Act with the 1987 amendment or without it. For many of the same reasons that support our interpretation of the 1987 amendment, we would reach the same conclusion with respect to the 1984 Act without the 1987 Amendment. Moreover, though subsequent expressions of legislative intent are normally an unreliable guide to the meaning of a statute, *see Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 117, 100 S.Ct. 2051, 2060, 64 L.Ed.2d 766 (1980), the views of the Senate sponsors of the 1987 amendment are particularly pertinent to a proper understanding of whether the 1984 Act makes the Guidelines applicable to straddle crimes since these senators, especially senators Kennedy and Thurmond, were the principal architects of the 1984 Act.

Appellant contends that we should uphold the District Court's discretion to sentence him under pre-Guidelines law in light of our decision in *United States v. De Simone, supra.* In that case we encountered somewhat the reverse of the problem now before us. A provision of prior law had precluded parole for certain drug offenses. 26 U.S.C. § 7237(d) (1970). That provision was repealed as of May 1, 1971. Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, § 1101(b)(4)(A), 84 Stat. 1292 (1971). De Simone's offense straddled the effective date of the repealer. He argued that since his offense had continued past that date, he was entitled to the benefit of the new sentencing law. We disagreed. However, Judge Feinberg's opinion did not announce a general rule prohibiting application of new sentencing provisions to straddle crimes. Instead, it surveyed the legislative materials and found no indication that Congress intended to require application of the new sentencing law to straddle crimes. Although recognizing that in other circumstances "such a rule should be followed," 468 F.2d at 1199, the opinion upheld the sentencing judge's decision to use prior law. However, with respect to the amended Sentencing Reform Act, as we have pointed out, the intent of Congress to apply the Guidelines to continuing offenses completed after the effective date of the Guide-

lines is sufficiently clear to distinguish *De Simone*.

We therefore turn to a consideration of the application of the Guidelines to each of the appellants.

III. Application of the Guidelines to Appellants

■ *The Jury Verdict as to Story.* Story contends that, even if Congress intended the Guidelines to be applied to conspiracies that continue after November 1, 1987, he was correctly sentenced because the jury convicted him only of a pre-Guidelines offense. He maintains that the jury's finding that the conspiracy did not involve more than five kilograms of cocaine implicitly rejected the third means of committing the conspiracy alleged in the indictment—conversations in November and December 1987 and an agreement concerning a planned delivery of ten kilograms to the Northern District. Since this was the only allegation in the indictment involving more than five kilograms of cocaine and post-November 1 activity, he claims that the verdict must be understood as acquitting him of any offense after November 1, 1987.

This contention fails for two reasons. First, the 1987 transaction began as a two-kilogram deal and became a ten-kilogram deal sometime in mid-November. Story's principal role of putting Sabo in contact with Jones occurred in October and early November, before the larger amount was discussed. It was also never clear that Jones and the other Florida co-defendants could deliver all 10 kilograms. Hence, the jury was entitled to conclude that Story acted in furtherance of the conspiracy after November 1 but never expected the amount of cocaine to be as large as ten kilograms. Second, and more importantly, Story's sentence was incorrect whether or not he personally committed acts in furtherance of the conspiracy after November 1. There was overwhelming evidence that Story's co-conspirators took overt actions in November and December of 1987. Because Story joined the conspiracy, those acts by his co-conspirators occurring after November 1 are attributable to him, and he therefore committed the conspiracy offense after that date. Indeed, the evidence established not only that Story joined the conspiracy but also that he joined in planning the 1987 transaction, which his co-conspirators furthered after November 1.[6]

*Jones's Guilty Plea.* Before Jones entered his guilty plea, his attorney raised the issue of which sentencing law would be applied and argued that the Court could choose to regard the plea as a "non-Guidelines plea," even though the indictment alleged a conspiracy continuing past the Guidelines' effective date. The attorney further stated that "[t]he guidelines in this case would be a minimum of 87 months without parole and would just foreclose a plea." Judge Cholakis indicated that he would exercise what he viewed as his discretion not to apply the Guidelines if Jones admitted to acts before November 1, 1987, and if the Court was able to verify that Jones's pre-Guidelines involvement was "properly, factually supported." In the plea proceedings and at Story's subsequent trial, Jones admitted to numerous acts in furtherance of the 1987 cocaine deal, both before and after November 1.

■ The Government concedes that Jones entered his plea in reliance on the Court's statement that it would exercise discretion to impose a non-Guidelines sentence if the facts showed pre-November 1 conduct, and that such facts were shown. We have recently held that a district judge is not required to explain to a defendant tendering a guilty plea what the applicable guideline range will be in his case. *United States v. Fernandez*, 877 F.2d 1138, 1142–44 (2d Cir.1989). Nevertheless, when a district judge volunteers information concerning the Guidelines that is materially inaccurate and the defendant enters a guilty plea in reliance upon such misinformation, the plea is not valid. *See United States v.*

---

**6.** Because the facts show conduct in furtherance of the conspiracy after November 1, we need not decide the closer question of whether a straddle offense is covered by the Sentencing Guidelines if no conduct occurs after November 1 but the indictment, returned after that date, charges a conspiracy continuing until the date of indictment.

*Colunga,* 786 F.2d 655 (5th Cir.1986), (defendant entitled to withdraw plea after receiving incorrect sentencing information), *cert. denied,* 484 U.S. 857, 108 S.Ct. 165, 98 L.Ed.2d 120 (1987); *United States v. Alejandro,* 569 F.2d 1200 (2d Cir.1978) (same). In this case, though Judge Cholakis did not misinform Jones as to a particular sentence that would be imposed, he did assure Jones of insulation from a Guidelines sentence if facts showing pre-November 1 conduct were presented, and Jones was entitled to believe that such facts could be readily established. In such circumstances, the Government concedes that if we agree with its position that Judge Cholakis was obliged to sentence under the Guidelines, Jones is entitled to withdraw his plea.

Jones argues, nevertheless, that his non-Guidelines sentence should be affirmed because he subsequently made incriminating statements while relying on the position articulated by the Court at his plea proceedings. This argument is unavailing. If Jones elects to withdraw his plea, Rule 11(e)(6) of the Federal Rules of Criminal Procedure protects him against use of that plea and certain related statements in any subsequent proceedings. We need not now decide the scope of that protection. *See United States v. Stirling,* 571 F.2d 708, 730–32 (2d Cir.), *cert. denied,* 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978). As to Jones's attempt to enforce the District Court's assurance to exercise discretion concerning a pre-Guidelines sentence, that assurance is not specifically enforceable, even if we analogize the representation to a prosecutor's commitment in a plea bargain. A plea bargain may be enforced, depending on the circumstances, either by specific performance or by granting leave to withdraw the plea. *See Santobello v. New York,* 404 U.S. 257, 263, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). Since the District Court lacked authority to choose a pre-Guidelines sentence, the option of withdrawing the plea is the only appropriate remedy.

### Conclusion

We vacate the sentences imposed by the District Court and remand with instructions to resentence Story in accordance with the Guidelines and to allow Jones either to withdraw his plea or be resentenced under the Guidelines.

Reversed in part, sentences vacated, and case remanded for proceedings consistent with this opinion.