914 F.2d 259
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jerry WALKER, Defendant-Appellant.
 No. 89-1691.
 United States Court of Appeals, Sixth Circuit.
 Sept. 4, 1990.
 
 Before WELLFORD and SUHRHEINRICH, Circuit Judges; and BELL,* District Judge.
 PER CURIAM:
 
 
 1
 Appellant Jerry Walker was convicted of conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. Secs. 841 and 846 and sentenced to 30 years imprisonment. The indictment also sought the criminal forfeiture of his 1988 Cadillac Fleetwood pursuant to 21 U.S.C. Sec. 853. The forfeiture issue was not presented to the jury but instead, the district court found that the elements of the statute had been met, and ordered the car forfeited.
 
 
 2
 On appeal, Walker raises essentially five issues: (1) that the prosecutor made improper statements and elicited inadmissible evidence; (2) that the evidence was insufficient to establish a conspiracy; (3) that Walker was denied his right to a jury trial on the forfeiture issue; (4) that he was denied the effective assistance of counsel; and (5) that the sentencing guidelines should not have been applied to him, and were in any event improperly applied.
 
 1. Prosecutor's comments and evidence
 
 3
 Walker testified at trial, and on cross-examination, the prosecutor drew admissions from Walker that he had been arrested at crack houses on three occasions. The prosecutor also elicited from police officers information pertaining to these arrests. No objection was made by Walker's attorney to the testimony about the arrests.
 
 
 4
 The prosecutor again referred to the arrests in his closing argument by stating, "[T]he defendant has managed to be arrested in drug houses on several occasions. You don't get yourself in trouble like that unless you are up to something--you are up to something illegal; and that illegality is the sale of cocaine, drug trafficking." Again, no objection was made at trial.
 
 
 5
 Walker was also questioned about not using his proper home address on the papers for the Cadillac in dispute. The prosecutor, in the form of questioning, asked Walker if he failed to use his actual address because he was illegally living with a welfare recipient. No objection was made to this questioning.
 
 
 6
 Darrel Robertson, who pled guilty to conspiracy to distribute cocaine, testified in the Walker trial pursuant to a plea agreement. In eliciting information about the plea agreement on direct examination, the prosecutor established that Robertson had already testified in the trial of another trafficker, Johnnie Henderson, and that "several people" were convicted as a result. Johnnie Henderson, another alleged conspirator, also testified at trial, and the prosecutor asked Henderson if the government had indicated that it might move to reduce his sentence if he testified truthfully.
 
 
 7
 Appellant asserts that the prosecution's questions to Robertson and Henderson represented impermissible prosecutorial vouching for their testimony, improperly boosting the witnesses' credibility. He asserts further that the jury should have been instructed that Henderson's and Robertson's testimony regarding their guilty pleas should not be perceived as substantive evidence of guilt. Again, no timely objection was made, and no such jury instruction as is now suggested was offered to the district court at trial.
 
 
 8
 Those actions asserted to be error on appeal may lead to a reversal only if they constituted plain error.
 
 
 9
 The plain-error doctrine of the Federal Rule of Criminal Procedure 52(b) tempers the blow of a rigid application of the contemporaneous-objection requirement. The Rule authorizes the Courts of Appeals to correct only particularly egregious errors, those errors that seriously affect the fairness, integrity or public reputation of judicial proceedings. In other words, the plain-error exception to the contemporaneous-objection rule is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result. Any unwarranted extension of this exacting definition of plain error would skew the Rule's careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed. Reviewing courts are not to use the plain-error doctrine to consider trial court errors not meriting appellate review absent timely objection--a practice we have criticized as "extravagant protection."
 
 
 10
 Especially when addressing plain error, a reviewing court cannot properly evaluate a case except by viewing such a claim against the entire record.
 
 
 11
 United States v. Young, 470 U.S. 1, 15-16 (1985) (footnotes and citations omitted).
 
 
 12
 We have recently stated also that plain errors "are limited to those harmful ones that are so rank that they should have been apparent to the trial judge without objection, or that strike at the fundamental fairness, honesty, or public reputation of the trial." United States v. Causey, 834 F.2d 1277 (6th Cir.1987). It is probable that, had counsel made timely objections or proffered the instructions now sought some of those objections would have been sustained. In particular, objections to any reference to Walker's "illegal" living arrangements with an A.D.C. recipient, and the questions to witness Robertson concerning convictions reached in other trials following his testimony, would likely have been sustained as prejudicial or having no proper role in the Walker trial.
 
 
 13
 We conclude that such errors do not constitute plain error under the Causey definition so as to require a new trial.[1]
 
 2. Sufficiency of the Evidence
 
 14
 Appellant asserts that the evidence introduced at trial supported, at most, a finding that Walker purchased cocaine from Robertson and co-defendant Joey Williams. He claims that if it were assumed that he participated in such sales, such proof would support only a possession with intent to distribute charge, not a conspiracy charge.
 
 
 15
 "In order to prove a single conspiracy, the government must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal." United States v. Rios, 842 F.2d 868, 873 (6th Cir.1988) (citations omitted). The government responds that it met its burden of proof as to conspiracy, pointing to the testimony of Williams, who testified to the effect that he knew that Robertson and Henderson were selling cocaine to appellant.
 
 
 16
 In addition, Williams testified that an Anthony Hartwell arranged sales between Williams and Walker, and that his cousin, Carl Lewis, another co-conspirator, worked at a crack house with Walker. Finally, the government notes that Williams testified that Cederick Bridges, also affiliated with a crack house, was "with Walker a lot," and that Williams "used to sell them together frequently [sic]."
 
 
 17
 Robertson testified that Walker and an unidentified individual came to Robertson's house on one occasion to buy cocaine, and that on another occasion, Walker, co-conspirator Lewis, and the same unidentified individual again came to Robertson's house to buy cocaine. He testified further that Walker and the unidentified individual, referred to as Walker's "gunman," made purchases on four or five other occasions. He testified that Walker told him that he operated some crack houses, and that when one house was raided, he would simply move to another. Robertson also testified that, on various occasions, himself, Walker, Hartwell and others had engaged in buys of cocaine.
 
 
 18
 Appellant also claims that the evidence in this case may have supported a finding of multiple conspiracies, but not the single conspiracy charged. There is no indication in the record, however, that trial counsel for appellant ever sought to have the jury instructed on multiple conspiracies or any lesser count (of possession only), and he never objected to the introduction of what, on appeal, is claimed to be prejudicial hearsay. Finally, there is no indication in the record that counsel for appellant ever moved for judgment of acquittal.
 
 
 19
 We find no error on the question of sufficiency of the evidence.
 
 3. The Forfeiture Order
 
 20
 (a) Property subject to criminal forfeiture
 
 
 21
 Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law--
 
 
 22
 (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
 
 
 23
 (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation;
 
 
 24
 * * *
 
 
 25
 * * *
 
 
 26
 The court, in imposing sentence on such person, shall order, in addition to any other sentence imposed pursuant to this subchapter or subchapter II of this chapter, that the person forfeit to the United States all property described in this subsection.
 
 
 27
 * * *
 
 
 28
 * * *
 
 
 29
 (d) Rebuttable presumption
 
 
 30
 There is a rebuttable presumption at trial that any property of a person convicted of a felony under this chapter or subchapter II of this chapter is subject to forfeiture under this section if the United States establishes by a preponderance of the evidence that--
 
 
 31
 (1) such property was acquired by such person during the period of the violation of this subchapter or subchapter II of this chapter or within a reasonable time after such period; and
 
 
 32
 (2) there was no likely source for such property other than the violation of this subchapter or subchapter II of this chapter.
 
 
 33
 * * *
 
 
 34
 * * *
 
 
 35
 (o) Construction
 
 
 36
 The provisions of this section shall be liberally construed to effectuate its remedial purposes.
 
 
 37
 21 U.S.C. Sec. 853.
 
 
 38
 We take particular note of the pretrial order issued by the district court in this case:
 
 
 39
 With regard to Count II of the Indictment, which pertains to forfeiture of an automobile owned by defendant Walker, defendant has agreed to stipulate to this if guilt is established and will file a writing to that effect.
 
 
 40
 It appears that Walker filed no such contemplated writing despite the determination of guilt on the drug conspiracy charge. After return of the jury verdict on the conspiracy count, the following colloquy occurred between the court and counsel:
 
 
 41
 Mr. Jones (prosecutor): There is also the issue of the second count of the indictment, as the Court indicated, it would handle the forfeiture of the Cadillac.
 
 
 42
 The Court: Did you gentlemen agree, or did you not agree that it was yes, it was yes. If it was no, it was no. [sic]
 
 
 43
 Mr. Hayes (attorney for Walker): We left the issue for you to decide, Your Honor.
 
 
 44
 The Court: Then, I find that the car was used to facilitate the transportation of an illegal occupation, namely the sale of and the buying and selling of, purchase of for possible distribution of cocaine and cocaine base and the automobile is forfeited based on the testimony in the case.
 
 
 45
 Mr. Jones: Thank you, Your Honor.
 
 
 46
 Mr. Hayes: Thank you, Your Honor.
 
 
 47
 On appeal, despite the stipulation, Walker raises two issues relevant to the forfeiture. First, he claims that he was deprived of his right to have the jury decide the forfeiture issue, and second, that the judge's factual determination on the question was clearly erroneous.
 
 
 48
 It is not clearcut that a defendant is entitled to a jury in the forfeiture proceedings, either as a matter of statutory construction or under the Constitution. Many courts applying Sec. 853 have treated it as a jury issue. Some courts have also held that Sec. 853(d)'s rebuttable presumption, including the preponderance of the evidence standard, do not offend due process. "The argument that forfeiture is an element which must be proved beyond a reasonable doubt confuses culpability with consequences.... The statute, in effect, characterizes forfeiture as punishment for the crime and not part of the offense itself." United States v. Sandini, 816 F.2d 869 (3rd Cir.1987); see also United States v. Herrero, 893 F.2d 1512, 1541 (7th Cir.1990); United States v. Hernandez-Escarsega, 886 F.2d 1560, 1576-77 (9th Cir.1989). Because Sec. 853 forfeiture is part of the punishment imposed, the government maintains that the right to a jury determination under Sec. 853 is "debatable," but it does not now contest Walker's assumption that he was entitled to a jury.
 
 
 49
 Instead, the government argues that Walker clearly waived any right to a jury determination. This court has held that a waiver of the right to a trial by jury in the guilt phase of a trial must be in writing. United States v. Martin, 704 F.2d 267 (1983); see Fed.R.Crim.Pro. 23(a) (waiver must be in writing in "[c]ases required to be tried by a jury").
 
 
 50
 A waiver by Walker's trial counsel on this record seems clear. Both the pretrial order and the post-trial colloquy leave little room for doubt on this score. Walker should not now be heard to claim that the district court was in error in effectively carrying out his own agreement. United States v. Page, 661 F.2d 1080, 1083 (5th Cir.1981).
 
 
 51
 Under Sec. 853(a)(1), the Cadillac at issue would have been subject to forfeiture if the court decided that it was obtained as a result of Walker's drug-dealing activities. The court made no such finding. The evidence reflected that Walker, who had been laid off from his job with General Motors in January 1988, purchased the Cadillac for over $26,000, and another car for $12,000, both in cash within a two-day period in March 1988.
 
 
 52
 The trial court, however, found that vehicle was used to "facilitate the transportation of an illegal occupation" (and was thus subject to forfeiture under Sec. 853(a)(2)). There was no recitation concerning the evidence at trial to support such a finding. Two police officers testified that they had seen Walker driving the car, but no further attempt was made to tie those occasions to drug dealing. Several witnesses testified that they did not see Walker drive the car to or from a drug house.
 
 
 53
 There is a rebuttable presumption of forfeitability under Sec. 853(d). Walker testified that he saved from his intermittent earnings to purchase the Cadillac. We note also Walker's counsel's complete failure to object to the trial court's finding on forfeiture.
 
 
 54
 Under all the circumstances, we are persuaded that a remand is necessary to clarify the question of forfeiture and particularly the basis for the district court's decision that forfeiture of the Cadillac was mandated.
 
 4. Ineffective Assistance of Counsel
 
 55
 Walker asserts that his trial counsel was so ineffective as to require reversal under Strickland v. Washington, 466 U.S. 668 (1984). We normally do not consider ineffective assistance claims for the first time on direct appeal. Instead, such claims, if justified, must first be raised in a collateral proceeding. United States v. Swidan, 888 F.2d 1076, 1081 (6th Cir.1989).
 
 5. Sentencing Guidelines
 
 56
 Walker asserts error in applying a base offense level of 36. The base level of 36 is supported by a finding of trafficking in at least 50 kilograms of cocaine or 500 grams of cocaine base. Walker argues that because the testimony revealed consummated transactions of about 12 to 14 kilograms of cocaine, the base level of 36 was incorrect.
 
 
 57
 The government, however, points to testimony that Walker was involved in operating three crack houses. Evidence also indicated that Walker tried unsuccessfully to buy four kilograms on one occasion from Williams during the conspiracy period, and that he tried to negotiate deals to buy multi-kilogram quantities on a weekly basis from Robertson. Testimony implicated Walker in drug trafficking throughout 1987 until the indictment was issued in November 1988. Based on this background, we find the court's determination that Walker and others conspired to traffic in over 50 kilograms of cocaine was not clearly erroneous. 18 U.S.C. Sec. 3742(d).
 
 
 58
 Walker asserts that application of the guidelines, which went into effect on November 1, 1987, may not be applied to a conspiracy that began before that date. Such a claim has been rejected by numerous courts, including this one. United States v. Walton, No. 89-1862, slip op. at 19-20 (6th Cir. July 18, 1990); United States v. Meitinger, 901 F.2d 27 (4th Cir.1990); United States v. Terzado-Madruga, 897 F.2d 1091 (11th Cir.1990); United States v. Sheffer, 896 F.2d 842 (4th Cir.1990); United States v. Story, 891 F.2d 988 (2d Cir.1989); United States v. Lee, 886 F.2d 998 (8th Cir.1989); United States v. White, 869 F.2d 822 (5th Cir.), cert. denied, 109 S.Ct. 3172 (1989).
 
 
 59
 Finally, Walker asserts that the sentencing guidelines violate procedural due process by constraining the district court's discretion. Such a claim was rejected by this court in United States v. Allen, 873 F.2d 963 (6th Cir.1989).
 
 
 60
 We accordingly AFFIRM the conviction in all respects. We also AFFIRM the imposition of a sentence under the guidelines. We REMAND, however, for further consideration and clarification of the forfeiture issue for the reasons stated.
 
 
 
 *
 The Honorable Sam H. Bell, United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 We do not address in this appeal any specific issues concerning ineffective assistance of counsel, if any, at trial