**UNITED STATES of America, Appellee,**

v.

**William R. UNDERWOOD,
Defendant–Appellant.**

**No. 933, Docket 90–1394.**

United States Court of Appeals,
Second Circuit.

Argued March 22, 1991.

Decided May 9, 1991.

Donald V. Morano, Chicago, Ill. for defendant-appellant.

Linda C. Severin, New York City, Asst. U.S. Atty., S.D.N.Y. (Otto G. Obermaier, U.S. Atty., S.D.N.Y., Annmarie Levins, and Howard E. Heiss, Asst. U.S. Attys., of counsel), for appellee.

Before FEINBERG, MESKILL and ALTIMARI, Circuit Judges.

FEINBERG, Circuit Judge:

William R. Underwood appeals from a judgment of conviction entered in June 1990 in the United States District Court for the Southern District of New York, Miriam Goldman Cedarbaum, J., after a jury trial. He contends that the district court erred in denying his motion for a new trial based on the government's inadvertent failure to disclose allegedly exculpatory evidence and his subsequent motion for a new trial based on newly discovered evidence. Underwood also claims that the district court erred in sentencing him to life imprisonment in accordance with the Sentencing Guidelines in the absence of a jury determination that his criminal conduct extended past the effective date of the Guidelines. For the reasons set forth below, we find Underwood's contentions to be without merit and affirm.

## Background

The government's evidence at trial showed that from the 1970's until his arrest in late 1988, Underwood supervised and controlled an extensive and extremely violent narcotics trafficking operation involving a number of murders and conspiracies to murder, a highly organized network for the street-level distribution of heroin and the importation of large quantities of heroin from Europe to the United States. The government presented the testimony of more than 50 witnesses, including a number of former members of Underwood's street-level distribution organization, and introduced more than 250 exhibits. Underwood's claims on appeal principally relate to the testimony of Carolyn Cobbs.

Cobbs, a former flight attendant, testified that she worked for Underwood as a courier of heroin and money from 1983 until 1988. She would smuggle large amounts of cash, typically $50,000 per trip, from the United States to Amsterdam or Brussels, where she would give the cash to Stuart Van Sichem, Underwood's heroin supplier. In the earlier years the heroin was mailed to the United States, but beginning in 1986 Cobbs herself carried the heroin on her return trip. Between January 1986 and September 1988 Cobbs made at least 30 such trips. Cobbs described in some detail how the heroin was packed by Van Sichem, in the hollow sides of jars of a discontinued hair cream product, to be smuggled into the United States and how she regularly returned the empty jars to Van Sichem to be reused. Cobbs' testimony was corroborated in a number of respects by other evidence, including the seizure from Van Sichem's apartment of two jars of the hair cream product showing signs of the type of use Cobbs described.

The jury found Underwood guilty of participating in a racketeering enterprise, 18 U.S.C. § 1962(c) (RICO); conspiring to participate in a racketeering enterprise, 18 U.S.C. § 1962(d) (RICO conspiracy); participating in a narcotics conspiracy, 21 U.S.C. § 846; and operating a continuing criminal enterprise, 21 U.S.C. § 848 (CCE). Underwood was sentenced under the Guidelines to life imprisonment on the CCE count and concurrent terms of 20 years each on the RICO and RICO conspiracy counts; his sentence on the narcotics conspiracy count was combined with the CCE sentence.

Discussion

### 1. The *Brady* Issue

When Cobbs was shown an array of photocopies of photographs before Underwood's trial, including a photocopy of a telefaxed photograph of Van Sichem, she identified another man as Van Sichem. Shortly thereafter, when the government obtained an actual photograph of Van Sichem to replace the telefaxed copy and showed Cobbs another array of photographs, Cobbs correctly identified Van Sichem. About a month after the jury verdict, in February 1990, the government discovered that it had inadvertently failed to disclose this information to the defense pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and so informed defense counsel. Underwood thereupon moved for a new trial. After an evidentiary hearing, the district court ruled that it was "inconceivable" that use of the undisclosed information to impeach Cobbs would have resulted in a different verdict, and denied the motion.

 The government's inadvertent nondisclosure of impeachment evidence requires reversal of a conviction only if the evidence is "material," i.e., "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985) (opinion of Blackmun, J.); see also id. at 685, 105 S.Ct. at 3385 (opinion of White, J.); *United States v. Petrillo,* 821 F.2d 85, 88–89 (2d Cir.1987). In light of Cobbs' identification of the actual photograph of Van Sichem and the substantial evidence corroborating Cobbs' testimony about her dealings with Van Sichem, we agree with the district court that there is no reasonable probability that use at trial of Cobbs' initial failure to identify a poorly reproduced photograph would have resulted in a different verdict, and that the government's inadvertent nondisclosure of the evidence does not entitle Underwood to a new trial.

### 2. Newly Discovered Evidence

In October 1990 Underwood made a second motion for a new trial, this time on the ground of newly discovered evidence. The motion was based on a written statement made by Van Sichem to Dutch authorities in March 1990, which Underwood claimed would have led to his acquittal because it was materially inconsistent with Cobbs' testimony and showed Cobbs' bias. In that statement, Van Sichem admitted a limited number of relatively minor heroin transactions with Underwood and Cobbs from about 1983 to 1986, but denied any dealing in narcotics after 1986. He also described an occasion on which heroin was packed in the sides of jars as described by Cobbs, but stated that it was Underwood who did the packing and claimed that the two jars seized from his apartment had been left behind by Underwood. Van Sichem also suggested that Cobbs' assertions regarding large and frequent heroin transactions with him were motivated by revenge, apparently for terminating an intimate relationship. After Underwood's motion had been filed, Van Sichem entered into a plea agreement with the United States and subsequently testified at the trial of others allegedly involved in Underwood's heroin-importation scheme. Van Sichem's trial testimony substantially corroborated Cobbs' testimony at Underwood's trial and contradicted the inconsistent statements in his March 1990 statement.

 A motion for a new trial on the ground of newly discovered evidence is committed to the discretion of the district judge, whose factual findings are accepted unless clearly erroneous, and whose denial of the motion will be upheld unless there has been an abuse of discretion. See, e.g., *United States v. Diaz,* 922 F.2d 998, 1006–07 (2d Cir.1990). The relief of a new trial is merited only if, among other things, the evidence would probably lead to an acquittal. Id. In this case, the district court found that even assuming the March 1990 statement was admissible and without considering Van Sichem's subsequent trial testimony, the March 1990 statement "would

be more likely to strengthen the government's case than to weaken it." We agree. Moreover, we also agree with the district court that the potential value to Underwood of Van Sichem's March 1990 statement is substantially diminished, if not wholly eliminated, by Van Sichem's subsequent trial testimony corroborating Cobbs' testimony and contradicting those aspects of Van Sichem's March 1990 statement on which Underwood principally relies.

3. Applicability of the Sentencing Guidelines

■ According to Underwood, the Sentencing Guidelines mandated a sentence of life without parole on his CCE conviction, but pre-Guidelines law would have allowed the district court discretion to impose a prison term of from 10 years to life. Because of the possibility of a lesser sentence, Underwood maintains that in the absence of a specific jury determination that his offense continued past November 1, 1987, the effective date of the Sentencing Guidelines, he must be resentenced under pre-Guidelines law.

We believe that the Supreme Court's decision in *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), is dispositive of Underwood's claim. In *McMillan*, the Court considered constitutional challenges to a state statute mandating a minimum sentence for specified crimes if the sentencing judge found by a preponderance of the evidence that the offender visibly possessed a firearm during commission of the offense. The Court found that visible possession of a firearm was not an element of the specified crimes, id. at 85–86, 106 S.Ct. at 2415–16, and did not alter the maximum penalty for committing them, id. at 87–88, 106 S.Ct. at 2416–17, "but instead is a sentencing factor that comes into play only after the defendant has been found guilty of one of those crimes beyond a reasonable doubt," id. at 86, 106 S.Ct. at 2416. The Court went on to hold that determination of such sentencing factors by the court by a preponderance of the evidence, rather than by the jury beyond a reasonable doubt, violated neither the due process clause nor the sixth amendment right to a trial by jury. Id. at 91–93, 106 S.Ct. at 2418–20.

Underwood concedes that the question of whether his offense continued past November 1, 1987 has no relevance to his guilt or innocence of the crimes with which he was charged and does not increase the maximum penalty for committing them, but relates solely to his sentence. We therefore conclude that the factual determination as to whether Underwood's offense continued past the effective date of the Guidelines is, in the language of *McMillan*, a "sentencing factor," and may be resolved by the district court using a preponderance of the evidence standard.

Moreover, our conclusion that a defendant is not entitled to a jury finding on the applicability of the Guidelines is, we believe, implicit in our decision in *United States v. Story*, 891 F.2d 988 (2d Cir.1989). We principally held in *Story* that the Guidelines apply to crimes like Underwood's that straddle the effective date of the Guidelines. Id. at 991–96. However, we also addressed one appellant's contention that the jury's determination (in a special verdict) of the amount of cocaine involved in the charged conspiracy necessarily meant that the jury found no culpable conduct after November 1, 1987. Id. at 996. We first rejected appellant's version of the meaning of the jury's quantity determination, stating that "the jury was entitled to conclude" that appellant's culpable conduct continued past November 1, 1987 without finding that appellant expected the deal to involve a larger quantity of cocaine. Id. Underwood relies on the quoted language to argue that the date determination was the province of the jury; the government relies on the same language to argue that the *Story* panel made its own determination from the evidence. We are persuaded that the government's view is the correct one, particularly because in *Story* the panel went on to conclude that the evidence presented at trial established that overt acts in furtherance of the charged conspiracy continued past November 1, 1987, and held that the district court had

therefore erred in not applying the Guidelines. Id.

Other circuits confronted with the issue of the applicability of the Guidelines have likewise treated the termination date of a continuing crime as a finding to be made by the district court, albeit without squarely addressing a claim that a jury determination is necessary. For example, in *United States v. Watford*, 894 F.2d 665 (4th Cir. 1990), an appellant contended that he was entitled to be sentenced for his conspiracy conviction under pre-Guidelines law because his criminal conduct ended before the effective date of the Guidelines. In an opinion by Judge Wilkins, the Chairman of the United States Sentencing Commission, the Fourth Circuit upheld the district court's finding that the Guidelines applied, stating that "the district court correctly used a preponderance of the evidence standard in determining that criminal conduct in furtherance of the conspiracy occurred before and after November 1, 1987." Id. at 670–71. In response to a similar contention in a case in which both the jury (by special verdict) and the district judge had found that the conspiracy at issue continued beyond November 1, 1987, the Eighth Circuit focused on the district judge's conclusion instead of the jury's: "This is a finding of fact which we review under the clearly erroneous standard.... After reviewing the ample evidence in the record under this standard, we are satisfied that *the court's finding* was not clearly erroneous." *United States v. Wayne*, 903 F.2d 1188, 1196–97 (8th Cir.1990) (emphasis added). Other circuits, without explicitly so stating, have also apparently assumed that the question is one for the court. For example, the Tenth Circuit has referred to the trial court's "factual determination that the conspiracy continued until December 1987," *United States v. Williams*, 897 F.2d 1034, 1039–40 (10th Cir.1990), and the Third Circuit recently noted in upholding application of the Guidelines that "the jury *and the court* were entitled to conclude that [defendant] chose to remain a culpable member of the conspiracy after November 1, 1987," *United States v. Rosa*, 891 F.2d 1063, 1068–69 (3d Cir.1989) (emphasis added).

Underwood identifies no authority explicitly related to the termination date of a continuing crime, but principally relies on our decision in *United States v. Orozco–Prada*, 732 F.2d 1076 (2d Cir.), cert. denied, 469 U.S. 845, 105 S.Ct. 155, 83 L.Ed.2d 92 (1984). His reliance on *Orozco–Prada* is misplaced. In that case, the defendant was charged in a single count with a conspiracy involving marijuana, cocaine or both. The statute provided for a greater maximum sentence for cocaine-related conspiracies than for marijuana-related conspiracies, and the defendant was sentenced to a term in excess of the statutory maximum for marijuana-related conspiracies. We held that a sentence above the statutory maximum for marijuana-related conspiracies was improper because the general jury verdict did not reveal whether the jury had found defendant guilty of a cocaine-related or a marijuana-related conspiracy. Id. at 1083–84. In this case, in contrast to *Orozco–Prada*, there is no ambiguity in the jury verdict regarding the offense of conviction and the date determination relates only to appellant's sentence.

In an analogous context, we recently held that because the quantity of marijuana was not an element of the marijuana trafficking offense at issue and related solely to sentencing, a jury determination of the quantity was unnecessary. *United States v. Madkour*, 930 F.2d 234, 237 (2d Cir.1991). The distinction between information necessary to identify the offense of conviction, as in *Orozco–Prada*, and information solely relevant to determining the sentence, as in *Madkour* and in this case, is illustrated by a recent Sixth Circuit case presenting both issues, *United States v. Todd*, 920 F.2d 399 (6th Cir.1990). In that case, the Sixth Circuit noted that the district court had properly submitted a special interrogatory to the jury so that it could specify whether defendant's involvement in the charged conspiracy related to cocaine, marijuana or both, but held that there was no error in the district court's refusal to similarly submit to the jury the question of the quantity of narcotics involved. Citing

*Orozco–Prada,* the court explained that the former issue related to the basis of defendant's guilt, a matter for the jury, but the latter was solely a sentencing consideration, to be determined by the court. Id. at 407–08 & n. 7.

█ In this case, Judge Cedarbaum properly recognized that whether Underwood's continuing offense extended past the effective date of the Guidelines presented a factual sentencing issue to be resolved by the court using a preponderance of the evidence standard. The issue was squarely raised in the district court at a hearing in February 1990; the judge explicitly addressed the question and determined that "there is clear evidence in this record that this enterprise continued past November 1, 1987." That finding is not clearly erroneous, and we therefore accept it. See 18 U.S.C. § 3742(e); *United States v. Ibanez,* 924 F.2d 427, 430 (2d Cir.1991).

█ Underwood argues that even if this finding was properly made by the district court by a preponderance of the evidence instead of by the jury beyond a reasonable doubt, a remand to the district court for redetermination is nevertheless required because the court's conclusion might have been affected by the subsequently discovered March 1990 Van Sichem statement denying any dealing in narcotics after 1986. Setting aside the question of whether Underwood waived this claim by failing to raise it below, cf. *United States v. Brody,* 808 F.2d 944, 947 (2d Cir.1986) (pre-Guidelines claim of factual inaccuracy waived because not raised in motion to reduce sentence pursuant to former Fed.R.Crim.P. 35), we are not persuaded that a remand is necessary. Van Sichem's denial in his March 1990 statement of narcotics activity after 1986 is contradicted by substantial evidence presented at Underwood's trial and by Van Sichem's own subsequent testimony at the trial of others involved in Underwood's scheme. Moreover, Judge Cedarbaum did have Van Sichem's March 1990 statement before her in January 1991 when she denied Underwood's motion for a new trial based on newly discovered evidence and found that the Van Sichem state-

ment was not likely to create a reasonable doubt of Underwood's guilt in the minds of the jury. There is no reason to believe that, had Judge Cedarbaum known about Van Sichem's statement in February 1990, she would have reached a different result on the issue of whether Underwood's criminal conduct continued past the effective date of the Guidelines.

We have considered all of appellant's arguments, and we affirm the judgment of conviction.