**UNITED STATES of America, Appellee,**

v.

**David BLOOM, Defendant–Appellant.**

**No. 1747, Docket 91–1154.**

United States Court of Appeals, Second Circuit.

Argued July 23, 1991.

Decided Aug. 26, 1991.

Gerald B. Lefcourt, New York City (Joshua L. Dratel, Gerald B. Lefcourt, P.C., of counsel), for defendant-appellant.

---

E. Scott Gilbert, Asst. U.S. Atty., S.D.N.Y. (Otto G. Obermaier, U.S. Atty., David E. Brodsky, Asst. U.S. Atty., S.D.N.Y., of counsel), for appellee.

Before WINTER, ALTIMARI and MAHONEY, Circuit Judges.

ALTIMARI, Circuit Judge:

Defendant-appellant David Bloom appeals from an order entered in the United States District Court for the Southern District of New York (David N. Edelstein, *Judge*), denying his Fed.R.Crim.P. 35 motion for a reduction in sentence. In March 1988, Bloom pleaded guilty to one count of mail fraud, in violation of 18 U.S.C. § 1341, and one count of fraud under the Investment Advisers Act, in violation of 15 U.S.C. § 80b–6 and § 80b–17. At the plea allocution, Bloom stated he was only pleading guilty to conduct occurring prior to November 1, 1987—the effective date of the United States Sentencing Guidelines ("Guidelines"). After ascertaining that the government had no objection, the district court accepted Bloom's plea and sentenced him under pre-Guidelines law. The district court imposed two four year terms of imprisonment to be served consecutively.

Bloom now contends that because the charges to which he pleaded guilty involved conduct occurring from December 1985 through December 1987, the district court was constrained to sentence him as a straddle offender under the Guidelines. In response, the government notes that at Bloom's allocution he specifically pleaded guilty only to events occurring prior to November 1, 1987. Thus, the government contends that the district court properly sentenced Bloom under pre-Guidelines law and that the motion for a reduction in sentence was properly denied.

For the reasons set forth below, we affirm the order of the district court.

## BACKGROUND

Upon graduation from college in 1985, defendant-appellant David Bloom moved to Manhattan and began holding himself out to friends and family as an investment advisor and money manager. In order to create an air of credibility, Bloom rented an expensive office in Midtown Manhattan which he furnished lavishly. Based on his claims of "wondrous" financial successes, Bloom attracted numerous clients who entrusted him with funds to invest on their behalf. Customarily, once an investor tendered funds to Bloom, he would send the investor a letter stating that the funds would be invested in stocks and stock options with varying degrees of risk.

Instead of investing these funds, however, Bloom engaged in a classic Ponzi scheme. Basically, he used the funds given to him to buy material goods for himself, including a lavish apartment, a summer home and a number of automobiles. In order to make it appear that he was properly investing the funds tendered to him, Bloom issued quarterly account statements reflecting fictitious profits. Moreover, when investors demanded some remittance, Bloom would pay them out of funds other investors had given to him. He repeatedly reassured his investors that they were "like family" and that their money was safe with him. Bloom successfully perpetrated this scheme for approximately two years. In all, Bloom received nearly $15 million from investors, none of which he ever invested in viable concerns.

After becoming aware of his activities, the government found that Bloom had failed to register as an investment advisor with the Securities and Exchange Commission ("SEC") as required by the Investment Advisers Act and had issued fraudulent earnings statements to investors. Upon uncovering the extent of Bloom's fraud, on March 24, 1988, the government, by information, charged Bloom with one count of committing mail fraud, in violation of 18 U.S.C. § 1341, and with one count of committing fraud under the Investment Advisers Act, in violation of 15 U.S.C. § 80b–6 and § 80b–17. The information specifically charged that Bloom committed the violative acts "from in or about December 1985 up to and including in or about December 1987."

On March 31, 1988, Bloom pleaded guilty to the charged offenses. At the ensuing plea allocution, defense counsel specifically

stated that Bloom did not admit to illegal conduct occurring after November 1, 1987, the date the United States Sentencing Guidelines became effective. The government agreed to this plea. The relevant colloquy between the government, the defense counsel and the court is as follows:

> Defense Counsel: It's my understanding that the allocution does not cover any specific events after November 1, 1987.
>
> Court: Is that correct?
>
> A.U.S.A. That allocution is acceptable to the government.
>
> Court: Thus, in sum what you are stating for the record suggests that the sentence here will not proceed under the new sentencing guidelines, is that correct?
>
> Defense Counsel: That's correct.

At no time during the allocution did Bloom admit that he committed any illegal act after November 1, 1987. The court accepted Bloom's plea.

Based on the allocution, the court sentenced Bloom under pre-Guidelines law. After reviewing the Pre–Sentence Report, considering letters submitted by investors who were victimized by Bloom's scheme, and hearing defense counsel's argument in favor of lenity, Judge Edelstein sentenced Bloom to two consecutive four year terms of imprisonment, ordered Bloom to make full restitution and imposed a mandatory assessment of $100. Bloom is currently serving this sentence.

Thereafter, Bloom made a motion pursuant to Fed.R.Crim.P. 35 for a reduction in sentence, contending that he had "learned his lesson." While Bloom argued that the sentence imposed on him was too severe in light of his acceptance of responsibility, he did not challenge its legality. The district court denied this motion.

Subsequently, Bloom retained new attorneys who moved the court to reconsider its decision on the Rule 35 motion. At this time, Bloom argued that because he had pleaded guilty to crimes which encompassed acts committed after November 1, 1987, the district court had acted illegally by failing to sentence him under the Guidelines. The district court rejected this argument and denied Bloom's motion. This appeal followed.

## DISCUSSION

Bloom contends that because the charges to which he pleaded guilty involved conduct occurring from December 1985 *through December 1987*, the district court was constrained to sentence him under the Guidelines as a straddle offender. *See United States v. Story,* 891 F.2d 988 (2d Cir.1989) (defendants whose illegal activities occurred both pre- and post-Guidelines—*i.e.,* were straddle offenders—must be sentenced under the Guidelines). Although Bloom concedes that during the plea allocution he specifically pleaded guilty only to conduct occurring *prior to November 1, 1987,* he now claims that he in fact pleaded guilty to the *entire charge.* Because the charge encompassed acts occurring after November 1, 1987, Bloom contends that the district court was required to sentence him as a straddle offender.

The basis of Bloom's argument is that a verdict or a plea of guilty represents a finding or an admission that the defendant committed *all* of the illegal conduct charged. *See, e.g., United States v. Broce,* 488 U.S. 563, 570, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989); *United States v. Morrison,* 938 F.2d 168, 171 (10th Cir.1991) ("By pleading guilty, defendant admitted that he committed the offense charged."); *United States v. Henson,* 848 F.2d 1374, 1385 (6th Cir.1988) ("A jury's verdict [or a plea of guilty] represents a finding that a crime was committed as alleged in the indictment."), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 784, 102 L.Ed.2d 776 (1989). Since Bloom pleaded guilty to both counts of the information, he contends that he necessarily admitted to conducting illegal activities during the entire period specified in the charge. Thus, Bloom claims that he was a straddle offender who, according to our decision in *Story, must* be sentenced under the Guidelines. We disagree.

In *Story,* we held that a court lacks the authority to sentence under pre-Guidelines

law a defendant who is shown to have been engaged in or admits to engaging in illegal conduct after November 1, 1987. 891 F.2d at 996. Here, by virtue of the statements made at the plea allocution, it is clear that Bloom did not admit to any alleged conduct occurring post-Guidelines. Additionally, the government tendered no proof of such conduct at the sentencing hearing. Thus, we are now faced with an issue that we left open in *Story*.

Our recent decision in *United States v. Underwood*, 932 F.2d 1049 (2d Cir.1991) has, in part, spoken to the issue. In *Underwood*, we concluded that the decision of whether an offense is a straddle crime is to be made by a judge at sentencing. In rejecting the defendant's claim that such a determination was to be left to the jury, we stated, "the factual determination as to whether [defendant's] offense continued past the effective date of the Guidelines is . . . a 'sentencing factor,' and may be resolved by the district court using a preponderance of the evidence standard." *Id.* at 1053. Implicit in this holding is the conclusion that a court will determine whether an offense is a straddle crime by considering facts adduced at trial or during an allocution, rather than by mechanically viewing the charge. Since the period during which an offense occurs is considered a "sentencing factor" to be determined by a judge—instead of an element of the offense to be determined by a jury—a court may conclude that defendant's participation in the charged offense ceased before the time period alleged in the indictment had elapsed. Although a defendant has pleaded guilty to an *entire* charge, a court still retains the authority to determine, by a preponderance of the evidence, applicable sentencing factors.

Other courts that have addressed the type of issue presented by this case have concluded that if it is not shown that the charged pattern of illegal activity encompasses conduct occurring after November 1, 1987, the district court should not impose a sentence under the Guidelines. *See, e.g., United States v. Masters*, 924 F.2d 1362, 1369 (7th Cir.) (holding that the district

judge must make a finding as to when conspiracy ended in order to determine whether defendant was a straddle offender), *cert. denied*, —— U.S. ——, 111 S.Ct. 2019, 114 L.Ed.2d 105 (1991); *United States v. Wayne*, 903 F.2d 1188, 1196–97 (8th Cir.1990). For example, in *United States v. Bakker*, 925 F.2d 728, 739 (4th Cir.1991), the court concluded that because the ending date of a conspiracy alleged in an indictment is often "tentative and subject to change," a court must examine the facts supporting the existence of the alleged conspiracy to determine whether it was a straddle crime. Citing *Story*, the Fourth Circuit stated: "[T]he ending date of an indictment does not govern whether an offense should be classified as a straddle crime. . . . Instead, to determine if a crime straddles the effective date of the Guidelines, we examine whether the conspiracy actually 'was carried on and continued beyond the effective date of the Act.' " *Id.* at 739 (quoting *United States v. Sheffer*, 896 F.2d 842, 844–45 (4th Cir.1990)). In *Bakker*, the court found that at trial the government had failed to introduce evidence of the defendant's participation in the charged conspiracy after November 1, 1987, even though defendant was found guilty of participating in the conspiracy from "January 1, 1982 to present" (*i.e.,* 1988). Therefore, the court concluded that the district court properly sentenced the defendant under pre-Guidelines law. This comports with our decision in *Underwood*.

Based on the foregoing, we conclude that a district court has the authority to determine whether a defendant's participation in the charged offense continued through the dates alleged in the indictment. Here, Bloom essentially negotiated a change in the plea agreement during the allocution by stating that he was only pleading guilty to conduct occurring prior to November 1, 1987. *See* Gov't Supp.App. at 5 ("[T]he U.S. Attorney's Office agreed not to charge David with committing any crimes after November 1, 1987."); *see also United States v. Edgecomb*, 910 F.2d 1309, 1312 (6th Cir.1990) ("If [defendant] disagreed with the dates of the conspiracy, he should have attempted to negotiate a change in the plea agreement."). At the allocution, no specific evidence was

presented which indicated that Bloom continued to commit the charged conduct beyond November 1, 1987. Since Bloom's plea allocution was deliberately limited to pre-Guidelines conduct and the government failed to introduce evidence of post-Guidelines conduct, the district court did not err in finding by a preponderance of the evidence that the defendant's illegal conduct occurred pre-Guidelines. Moreover, because Bloom specifically disclaimed that his conduct encompassed acts occurring after November 1, 1987, he may not now argue that he presented proof of such conduct to Judge Edelstein. *See United States v. Sloman,* 909 F.2d 176, 182 (6th Cir.1990) (counsel who stated that his client's conduct extended past November 1, 1987 and agreed that his client should be sentenced under the Guidelines has waived his objection to the judge's proposed course of conduct.). We thus find that the district court did not err in sentencing Bloom under pre-Guidelines law.

## CONCLUSION

For the reasons set forth above, we affirm the district court's order denying Bloom's Rule 35 motion.