**UNITED STATES of America,
Appellee,**

v.

**George RIVERA, also known as Boy
George, Defendant–Appellant.**

No. 03–1401.

United States Court of Appeals,
Second Circuit.

Argued: Feb. 20, 2004.

Decided: July 22, 2004.

Helen V. Cantwell, Assistant United States Attorney, New York, NY (James B. Comey, United States Attorney for the Southern District of New York, Marc L. Mukasey, Assistant United States Attorney, New York, NY, on the brief), for Appellee.

Cheryl J. Sturm, Chadds Ford, PA, for Defendant–Appellant.

Before: OAKES, KEARSE, and CABRANES, Circuit Judges.

KEARSE, Circuit Judge.

Defendant George Rivera, sentenced in 1991 to, *inter alia,* life imprisonment, to be followed by a five-year term of supervised release, for his convictions of conspiracy to distribute heroin and attempted income tax evasion, appeals from an order of the United States District Court for the Southern District of New York, Shirley Wohl Kram, *Judge,* denying his motion pursuant to Fed.R.Crim.P. 35 (1985) for a correction of his sentence on the ground that the sentence was illegal in light of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The district court denied his motion on the grounds (a) that the version of Rule 35 that became effective on November 1, 1987 ("1988 version"), and remained in effect when Rivera was sentenced in April 1991, did not permit a district court to correct a sentence except on a remand by the court of appeals following a finding of error, which had not occurred in this case; and (b) that Rivera's motion was in effect a collateral attack on his conviction, and because it was his second or successive such attack it could not be filed without permission from the court of appeals, which had not been obtained. On this appeal, Rivera contends principally that the 1988 version of Rule 35 could not properly be applied to him in light of *Apprendi,* and hence the court could correct his sentence "at any time," Fed. R.Crim.P. 35 (1985); that the sentence imposed on him was illegal in light of *Apprendi;* and that his motion was timely because a Rule 35 motion is not a collateral attack but rather is a continuation of the process of direct appeal from the conviction. For the reasons that follow, we affirm the order of the district court.

## I. BACKGROUND

Rivera was arrested in May 1989 following an investigation into a narcotics trafficking operation. The factual background of the prosecution and the evidence presented at trial are detailed in *United States v. Rivera,* 971 F.2d 876, 880–82 (2d Cir.1992) ("*Rivera I* ").

### A. *Rivera's Conviction and Sentence*

Rivera was charged in a June 1990 superseding indictment ("indictment") in a total of 14 counts relating to his alleged leadership of the narcotics distribution organization. Count One alleged that, in violation of 21 U.S.C. § 846, Rivera had participated in a conspiracy to distribute more than one kilogram of heroin in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A), and that the conspiracy had

begun in or about April 1987 and had continued to the date of the indictment. Count Fourteen alleged that Rivera had attempted to evade income tax on substantial income received in 1988, in violation of 26 U.S.C. § 7201. At trial, the jury, although unable to reach verdicts on the other counts, returned verdicts of guilty on Count One, finding that the conspiracy involved one kilogram or more of heroin, and Count Fourteen.

█ The United States Sentencing Guidelines ("Guidelines") had become effective on November 1, 1987. The district court found that a preponderance of the evidence presented at Rivera's trial, including his organization's own records, established that the conspiracy had been in existence from September 1987 until Rivera's arrest in May 1989. "Straddle crimes," *i.e.*, continuing offenses that began before the effective date of the Guidelines and continued after that date, are subject to the Guidelines. *See, e.g., United States v. Story*, 891 F.2d 988, 993–96 (2d Cir.1989). Accordingly, the presentence report on Rivera ("PSR") calculated his recommended narcotics conspiracy sentence, as well as his recommended tax evasion sentence, under the Guidelines. The PSR calculated that more than 100 kilograms of heroin were involved in the conspiracy and that that quantity, along with other Guidelines adjustments, made Rivera's total offense level 44. Given Rivera's criminal history category of I, the Guidelines-recommended sentence was life imprisonment. Rivera did not contend that the Guidelines were inapplicable to his offenses but only that, for various reasons, a lower Guidelines range than that recommended by the PSR was appropriate.

The district court, in calculating Rivera's offense level under the Guidelines, found by a preponderance of the trial evidence that, from September 1987 to May 1989, the total quantity of heroin involved in the conspiracy exceeded 100 kilograms. Accepting the PSR recommendations, the court sentenced Rivera on April 24, 1991, principally to life imprisonment (without possibility of parole), to be followed by a five-year term of supervised release.

On his direct appeal, Rivera made various challenges to his conviction, complaining of the prosecutor's summation and several evidentiary and procedural rulings by the trial court. *See Rivera I*, 971 F.2d at 882. He did not challenge his sentence or contend that he should not have been sentenced under the Guidelines.

## B. *Rivera's Ensuing Motions*

Following *Rivera I* and prior to the present motion, Rivera made several motions seeking various forms of relief, all of which were denied. They included a motion in the district court in 1994 pursuant to 28 U.S.C. § 2255 to vacate his conviction on grounds relating to jury selection; a motion in the district court in 2001 seeking reduction of his sentence via the application to him of a then-recent amendment to the Guidelines; and an application in this Court in 2001 for permission to file a second or successive § 2255 motion in which he alleged that his conviction violated the principle announced in *Apprendi*. Rivera's motion for leave to file a second or successive § 2255 motion was denied on the ground that, whether viewed as a first or second § 2255 motion, *Apprendi* would not apply retroactively to his case. *See Rivera v. United States*, No. 01–3559 (2d Cir. June 5, 2003) (citing *Coleman v. United States*, 329 F.3d 77 (2d Cir.2003), and *Forbes v. United States*, 262 F.3d 143, 146 (2d Cir.2001) (per curiam)). It does not appear that any of Rivera's motions suggested that the Guidelines were in any way inapplicable to him.

## C. *The Present Rule 35 Motion*

In January 2003, Rivera, invoking the version of Fed.R.Crim.P. 35 that was in effect until November 1, 1987, which provided that the district court "may correct an illegal sentence *at any time,*" Fed. R.Crim.P. 35 (1985) ("1985 version") (emphasis added), moved for a correction of his sentence for the heroin conspiracy offense, arguing that the sentence imposed on him in 1991 was illegal in light of *Apprendi* because the jury had not made a finding that the conspiracy continued to exist on or after November 1, 1987. He contended that, in at least two respects, the punishment prescribed for a conspiracy that ended before November 1987 was less severe than for one that continued thereafter. First, a federal prisoner serving a sentence of life imprisonment for a pre–November–1987 offense was eligible for parole after 10 years, *see* 18 U.S.C. § 4205(a), *repealed by* Sentencing Reform Act of 1984 ("1984 Act"), Pub.L. No. 98–473, tit. II, ch. 2, § 218(a), 98 Stat.1987, 2027; Rivera argued that the 1984 Act, which generally abolished parole for federal offenses, does not apply to "crimes committed" before November 1, 1987 (Rivera brief on appeal at 20). *But see* 1984 Act, Pub.L. No. 98–473, § 235(b)(1)(A), 98 Stat. 2032 (delaying effectiveness of the abolition of parole not for an individual who, before the effective date of the statute (*i.e.,* November 1, 1987), merely committed an offense, but rather for an individual who, before that date, was "convicted" of an offense). Second, he argued that the sentence for a § 846 conspiracy committed prior to November 18, 1988, could not require supervised release or any comparable supervision because supervised release, which was applicable to substantive narcotics offenses, was not made applicable to § 846 conspiracy offenses until November 18, 1988, *see* Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, 102 Stat. 4377; *United States v. Melendez,* 996 F.2d 605, 606 (2d Cir.1993), and the imposition of "special parole," the predecessor of supervised release, *see* 21 U.S.C. §§ 841(b) and (c) (1982), *amended by* Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, § 1004, 100 Stat. 3207, 3207–6, was not authorized for a § 846 conspiracy, *see Bifulco v. United States,* 447 U.S. 381, 400–01, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980).

Rivera contended that because these penalty increases would not be applicable to a conspiracy that had ceased to exist prior to November 1, 1987 (or prior to November 18, 1988, insofar as supervised release is concerned), the date of termination of the conspiracy was an element of that offense. He argued that under *Apprendi,* therefore, the date of the conspiracy's termination was a fact required to be found by the jury. Instead, the jury had been instructed that

> [w]hile the indictment charges that the conspiracy began in or around April 1987, up to and including the date of the filing of the indictment which took place in June of 1990, it is not essential that the government prove that the conspiracy started and ended on those or any other specific date or dates.
>
> It is sufficient if you find that in fact a conspiracy was formed and existed for some time within the period set forth in the indictment.

(Trial Transcript, November 7, 1990, at 4531.) Rivera argued that the jury thus could have found him guilty of conspiracy entirely on the basis of overt acts performed before November 1987. As a sentence of life imprisonment without possibility of parole and an order for supervised release were not authorized for a strictly pre–November–1987 conspiracy, and the jury had made no finding as to the conspiracy's date of termination, Rivera contend-

ed that his sentence was illegal under *Apprendi*. He also contended that because the jury did not make a finding that the conspiracy continued on or after November 1, 1987, his offense must be deemed to have been completed prior to that date; hence the version of Rule 35 that became effective on November 1, 1987, but was expressly made inapplicable to offenses committed before that date, *see* 1984 Act, Pub.L. 98–473 § 215, 98 Stat.2015–16 (amending Rule 35); *id.* § 235(a)(1), 98 Stat.2031 (setting effective date), *as amended by* Pub.L. 99–217, 99 Stat. 1728 (1985) (resetting effective date of amended Rule 35 at November 1, 1987), *and by* Pub.L. 100–182, 101 Stat. 1266, 1266 (1987) (amended Rule 35 to "apply only to" offenses committed after November 1, 1987), was not applicable to him. Instead, he argued, the 1985 version of Rule 35, which remained applicable to offenses completed prior to November 1, 1987, *see id.*, was applicable to his offense, and the district court could therefore, under the 1985 version of Rule 35, correct his allegedly illegal sentence "at any time."

In a written opinion, *Rivera v. United States*, 2003 WL 21488022, at *1 (S.D.N.Y. June 27, 2003) (*"Rivera II"*), the district court denied the motion on two grounds. First, it rejected Rivera's contention that the court could apply the 1985 version of Rule 35 to his motion, noting that the 1988 version of the Rule was applicable to offenses committed on or after November 1, 1987 (and before a December 1, 1991 amendment). *See Rivera II*, 2003 WL 21488022, at *2. The court stated, citing *United States v. Underwood*, 932 F.2d 1049, 1053 (2d Cir.1991), that whether the conspiracy continued past November 1, 1987, was to be determined by the court by a preponderance of the evidence, and that " '[a] conspiracy is presumed to continue until the last overt act of any of the conspirators.' " *Rivera II*, 2003 WL

21488022, at *1 (quoting *United States v. Romero*, 897 F.2d 47, 52 (2d Cir.1990)). Based on the evidence at trial, including drug records showing that Rivera distributed heroin well past November 1, 1987, as well as drug seizures made as late as April 1989 and tapes of several dozen wiretapped conversations on Rivera's home telephone in April 1989 (*see Rivera I*, 971 F.2d at 882 ("On April 4, 1989, the New York police obtained authorization to wiretap Rivera's home phone .... The tap remained for twenty-seven days, and fifty-eight recorded conversations were introduced into evidence. These conversations provided a detailed picture of the ongoing heroin conspiracy and Rivera's control over it.")), the district court concluded that Rivera's offenses continued past November 1, 1987, making the 1988 version of Rule 35 applicable to him, *see Rivera II*, 2003 WL 21488022, at *1. Unlike the 1985 version of Rule 35, which previously had allowed the court to correct an illegal sentence "at any time," the 1988 version permitted a district court to correct a sentence only on a remand following an appellate finding of error. *Id.* at *2 (internal quotation marks omitted). There had been no such appellate finding or remand for Rivera.

Second, the court found that, despite the Rule 35 label attached to Rivera's motion, the motion was in essence a collateral attack on his sentence that fell within the scope of 28 U.S.C. § 2255. As Rivera had made a § 2255 motion in 1994, the court stated that this was a second or successive § 2255 motion, which could not be filed without permission from the court of appeals. No such permission had been obtained. *See Rivera II*, 2003 WL 21488022, at *2.

This appeal followed.

## II. DISCUSSION

On appeal, Rivera contends, *inter alia,* (1) that the termination date of a conspiracy is an element of the conspiracy offense if it has the potential to increase the statutory maximum sentence, and as such it is a question that, in accordance with *Apprendi,* must be answered by the jury beyond a reasonable doubt; and (2) that in the absence of such a jury finding that the conspiracy lasted past November 1, 1987, the application to him of the 1988 version of Rule 35 likewise violates *Apprendi.* For the reasons that follow, we conclude that the determination of what version of the Federal Rules of Criminal Procedure is applicable is not governed by *Apprendi,* that the district court properly ruled that the 1988 version of Rule 35 is applicable to Rivera, and that his present motion is not authorized by the 1988 version of Rule 35.

In *Apprendi,* the Supreme Court dealt with a New Jersey "hate crime" statute that allowed the trial court to enhance the defendant's sentence beyond the statutory maximum otherwise applicable to his offense if the court found by a preponderance of the evidence that the crime of which the jury found the defendant guilty had been committed with the purpose of intimidating a group of individuals based on race. *See Apprendi,* 530 U.S. at 468–69, 120 S.Ct. 2348. The question presented in *Apprendi* was "whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt." *Id.* at 469, 120 S.Ct. 2348. The Court answered that question in the affirmative, stating that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348.

■ The *Apprendi* ruling carries no implications for the determination of what version of the Federal Rules of Criminal Procedure is applicable to a defendant's attempt to secure postconviction relief. Those Rules "govern *the procedure* in . . . criminal proceedings in the [federal] courts." Fed.R.Crim.P. 1(a)(1) (emphasis added). The 1985 version of Rule 35, to the extent invoked here by Rivera, simply provided that "[t]he court may correct an illegal sentence at any time," Fed. R.Crim.P. 35(a) (1985); and the 1988 version provided, in pertinent part, that "[t]he court shall correct a sentence that is determined on appeal under 18 U.S.C. 3742 to have been imposed in violation of law, to have been imposed as a result of an incorrect application of the sentencing guidelines, or to be unreasonable, upon remand of the case to the court," Fed.R.Crim.P. 35(a) (1988); *see also* Fed.R.Crim.P. 35(a) (2002) (current version of Rule 35(a) states that "[w]ithin 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error"). Thus, each version of Rule 35 has merely provided a mechanism by which— after a defendant has been sentenced—the court has been allowed, in the circumstances set out in the Rule itself, to correct the sentence. Rule 35 does not establish sentencing levels or specify the factual basis for any sentencing calculation. Nor does any version of the Rule alter the maximum penalty for an offense of conviction or permit a sentence to be increased above the statutory maximum. We thus find nothing in *Apprendi* to require a jury determination of any fact before a court can determine what version of Rule 35 governs a given sentence-reduction motion.

■ We note that the wide latitude provided in the older versions of Rule 35 for a

sentence correction "at anytime" was not required by the Due Process Clause. A defendant has no due process right to continue to challenge his conviction in perpetuity. *Cf. Carlisle v. United States,* 517 U.S. 416, 429, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996) (no due process right to make a postverdict motion for a judgment of acquittal one day beyond the seven-day period allowed by Fed.R.Crim.P. 29(c)); *Herrera v. Collins,* 506 U.S. 390, 426, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (O'Connor, J., concurring) ("At some point in time, the state's interest in finality must outweigh the prisoner's interest in yet another round of litigation. In this case, that point was well short of eight years.").

In sum, we conclude that the district court made no error of law in concluding that it had the authority to determine what version of Rule 35 was applicable. Nor do we see any error in the court's factual determination that the conspiracy continued beyond November 1, 1987, which made the 1988 version of Rule 35 applicable. The evidence discussed in *Rivera I* plainly reveals that the conspiracy was ongoing in April of 1989.

■■ Finally, we see no error in the district court's conclusion that Rivera's so-labeled Rule 35 motion was properly to be construed as a § 2255 motion. The court is not required to accept labels the parties place on their motions if those characterizations are inapt, *see, e.g., Jiminian v. Nash,* 245 F.3d 144, 148–49 (2d Cir.2001), and, as discussed above, the applicable version of Rule 35 provided no basis for the relief sought by Rivera.

Section 2255, on the other hand, expressly provides that a federal prisoner may move under that section for release on the ground, *inter alia,* that "the sentence was in excess of the maximum authorized by law ...." 28 U.S.C. § 2255. This provision provides little solace for

Rivera here, however, for we have held that *Apprendi* is not to be applied retroactively on a collateral attack brought on by a motion under § 2255. *See Coleman v. United States,* 329 F.3d 77, 90 (2d Cir.), *cert. denied,* —— U.S. ——, 124 S.Ct. 840, 157 L.Ed.2d 719 (2003). Moreover, § 2255, as amended effective April 24, 1996, provides that "[a] 1–year period of limitation shall apply to a motion under this section." 28 U.S.C. § 2255, par. 6. We see no way in which Rivera's present application, made in 2003, invoking the Supreme Court's 2000 decision in *Apprendi* to challenge his 1991 conviction, could be considered timely.

Rivera argues that his motion should not be deemed a § 2255 collateral attack and was permissible here because "[t]he former Rule 35 is a continuation of the appellate process" (Rivera brief on appeal at 34), citing *Heflin v. United States,* 358 U.S. 415, 418 n. 7, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959). His reliance on *Heflin* is misplaced. First, the *Heflin* footnote did not state that a Rule 35 motion was part of the appellate process but only that it was made in the same "case." 358 U.S. at 418 n. 7, 79 S.Ct. 451. Second, although in that respect the Court contrasted Rule 35 with § 2255, stating that "a motion under § 2255 ... is not a proceeding in the original criminal prosecution but an independent civil suit," *id.,* a motion under the current version of § 2255 is indeed made in the same criminal case. *See, e.g.,* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 1 Advisory Committee Note (1976) ("a motion under § 2255 is a further step in the movant's criminal case and not a separate civil action"). Finally, *Heflin* is not relevant here because the Court was dealing with the original version of Rule 35 which, like the 1985 version, stated that such a motion could be made " 'at any time,' " *id.*

at 418, 79 S.Ct. 451 n.6 (quoting original Rule 35). As discussed above, the 1988 version, which is applicable to Rivera, is materially different.

Because Rivera's claim was not appropriately brought under Rule 35, and his *Apprendi* claims challenging his conviction are not cognizable in a motion under § 2255, we do not reach his underlying claim that the principle announced in *Apprendi* required that the matter of the termination date of his conspiracy be decided by the jury beyond a reasonable doubt.

## CONCLUSION

We have considered all of Rivera's contentions on this appeal and have found in them no basis for reversal. Having concluded that Rivera's motion was not properly brought under the version of Rule 35 applicable to him, we affirm the order of the district court denying the Rule 35 motion.